## HUGH WALLACE HINES v. STATE

No. 34,590.   October 17, 1962

*R. E. Estes*, Granbury, for appellant.

*Sam Cleveland*, District Attorney, Stephenville, and *Leon Douglas*, State's Attorney, Austin, for the state.

ON APPELLANT'S SECOND MOTION FOR REHEARING

McDONALD, Judge.

Appellant has duly filed his second motion for rehearing, supported by a supplemental transcript in which appear a notice of appeal and a recognizance bond. Our prior opinion dismissing this appeal is withdrawn, along with the opinion on motion for rehearing, and the appeal is reinstated and is disposed of by this opinion.

The offense is fondling the sexual parts of a female under the age of fourteen years; the punishment, two years' confinement in the penitentiary.

The state's evidence reflects that the appellant operated a bicycle shop near his home in Granbury, Texas. The complaining witness, shown to be an eleven-year-old girl, testified that she was a schoolmate of appellant's daughter; that she knew that appellant fixed bicycles; that her "bike" was not running right; that she took it to appellant to fix. She further related that when she reached the home and shop of appellant she spoke to him, inquired where his daughter was and, being told the daughter was not there, told appellant about her "bike" being broken and asked him to fix it, then borrowed a "bike" from appellant and rode off to look for her schoolmate, the daughter of appellant. The complainant testified that she had skinned her knee and went to the hospital where her mother worked and had some merthiolate put on the injured knee. She then, being unable to locate her schoolmate, returned to the home of appellant, where she saw appellant's daughter and son. The two girls then obtained money from appellant and his brother and went to buy some snow cones. They returned to appellant's home, played ball for awhile, and then turned the crank on an apparatus in the bicycle shop. The complaining witness related that appellant's daughter then went outside to water some flowers and his son continued to turn the crank; that she (the complaining witness) then said she had to go home. She asked appellant if her bicycle was ready and he told her it was. She then went to get on the bicycle and "ride out". Appellant said: "Come here a minute," the witness related; that she started not to but that appellant said: "Come on, I won't hurt you," so she went over to the chair where appellant was sitting. She related further that appellant asked her to sit in his lap, which she did. Appellant then said he wanted to kiss her. "I thought I wouldn't let him, and he started doing it and he started doing like that between my legs," the complainant related. She was asked: "Where did he kiss you?" She stated: "On my lips." She stated that appellant kissed her two or three

times. She was asked: "What about his hand when he was kissing you; where was his hand?" She testified: "Between my legs." The question was then asked: "What did he do with his hand down there between your legs?" She replied: "He just went like that." (Indicating.)

The testimony then continued as follows:

"Q. With his finger? A. Yes, sir.

"Q. What was he catching ahold of down there? That thing down there between your legs? A. Yes, sir.

"Q. What did he do with that place down there between your legs? A. He just kept going like that. (Indicating).

"Q. I will ask you whether or not he was catching ahold of it with his fingers? A. Yes sir.

"Q. How many times did he do that way with his fingers? A. Five or six times, I think.

"Q. Did you say anything to him when he was doing that down there between your legs * * *? (The child's given name is omitted by this court as it would add nothing to the testimony.) A. I said I had to go."

The complainant then testified that she left. She related that the appellant said "Bye" to her, and she said "Bye" and left. She further related that she had on a pair of red shorts and a white blouse with rick-rack on it and a bow.

She was questioned more fully as follows:

"Q. Now, in order that I may understand you clearly, when you say he had his hand down there between your legs and catching ahold of it with his fingers, I will ask you whether or not you mean right between your legs where your legs join on your body? A. Yes, sir.

"Q. Is that where you mean; your private place down there, is that where you mean? A. Yes, sir.

"Q. That he had ahold of? A. Yes, sir."

The witness was asked the further question: "* * * whether

or not he was feeling of that with his hand and fingers on the outside of your little red shorts or on the inside of your little red shorts?" She related: "On the outside."

The witness testified that she went on to her own home and that shortly thereafter her mother came home from work at the hospital and that she immediately related to her mother and later that same afternoon to the officers the events that transpired.

The mother of the complainant testified that when she came home from work her daughter was crying, was very upset, and had to be put to bed.

The appellant did not testify in his own behalf, but he adduced testimony from his twelve-year-old daughter. She testified that she was in the same grade in school with the complaining witness; that she was with her at the home of her father, the appellant, at his bicycle shop; that she and her brother and the complainant played ball; that the two girls went to get some snow cones; that she did not see her father, the appellant, put his hands on the complainant, nor did she see him kiss her. The child further denied that she left the bicycle shop to go outside to water the flowers.

Appellant's sixty-five-year-old brother testified as a defense witness. He related that he was in the kitchen drinking coffee when he saw the complainant come to his brother's shop. He stated that he could see inside the shop from where he was sitting; that nothing unusual took place between his brother and the eleven-year-old complaining witness.

The appellant's ten-year-old boy testified that the complainant came to his father's shop. He related the events about the children eating the snow cones, playing ball, and turning the forge or the blower, and his father fixing the complainant's bicycle, and the witness stated that she rode off on it to go home. This witness also stated that his father at no time put his hands or arms around the little girl, nor did he hug or kiss her or put his hands on any part of the child's body. He stated that his sister was there all of the time and that she did not go out to water the flowers.

Appellant adduced further testimony showing that nothing unusual transpired in the bicycle shop between him and the young complaining witness.

The jury resolved the facts against the appellant, and we find the evidence sufficient to sustain their verdict.

Appellant filed four formal bills of exception, all of which were qualified by the court and none of which reflect error.

We have carefully reviewed the various informal bills and find no error.

The judgment of the trial court is affirmed.